Morning, may it please the Court. Marcus Curtis IV, petitioner of Vitality Chmukh. I plan to reserve five minutes for rebuttal. The agency here found Mr. Chmukh removable and denied his request for relief because of a conviction for possessing a stolen vehicle under Washington law. But the agency's analysis was wrong in all the ways that matter. Mr. Chmukh's conviction was not an aggravated felony because the mens rea required for his offense can be satisfied by a reason to believe, while the generic offense specifically excludes that mens rea. The state crime also prohibits disposing of stolen property, while the generic offense does not. So even if the IJ had actually performed a categorical analysis, and to be clear, there's no analysis here, the analysis couldn't stand. The state crime is broader than the federal offense, and so Mr. Chmukh wasn't removable on that ground. Is there like a practical way you can, I suppose you could sit and try to think of a hypothetical, but practically speaking, it seems to me that if you're going to dispose of property, you kind of have to possess it in some sort. Yeah, Judge Van Dyke, I mean, it's, we agree that it's closely related to possession, but as we sort of laid out in the briefs, there are, you know, it is possible to sort of broker a stolen vehicle. Theoretically possible, you agree, that's not, you know, that's, if you could, just because you could hypothesize that something could possibly happen, it has to at least be like, you know, I don't want to use the word likely, maybe that's too, but it has to be something that could practically happen in the state, that they actually would enforce the statute. No, right, Judge Van Dyke. I mean, well, so the realistic probability test, though, as long as, under this circuit's precedent, as long as the express text of the statute makes the crime broader than the generic offense, that's satisfying. I'm trying to think of a realistically probable way that you could dispose of something that you didn't possess in some sense. I mean, you can, if there's a group of retail thieves in, say, Portland, Oregon, near Nike headquarters, and they don't have sort of the market to move as many goods as they'd like to, they can work through a middleman in downtown L.A. who has access to these customers, and say, look, we're... So more like you're a broker thief that doesn't actually ever possess it, but you just connect person A and person B. No, no, right, Judge. I mean, you have a customer base that the thieves themselves don't have, and so you're able to say, look, I have 50 clients that will, you know, Next question. Is there any cases where it's been applied that way? And, I mean, as I remember, correct, in Washington, they say, Washington courts have said there really isn't a difference between these two things, for the reason I'm saying, that, like, you pretty much have to possess something usually to dispose of it. No, no, that's right, Judge Van Dyke. The Washington courts have said that in the context of, you know, explaining that it's a single-means crime, and so the jury doesn't have to agree on all five means of possession. They just have to agree on one to secure a conviction. But to your question, no, we're not aware of a specific Washington case, but again, we rely on the express text of the statute to satisfy that. I was going to ask, doesn't the, is it Taylor, Tyler, doesn't the Tyler case foreclose your argument, because the Supreme Court said these are not separate acts, but just facets of the same criminal conduct. And so, you know, I guess it's just synonyms to the ultimate act of possession. Right. Judge Sanchez, it's obviously a tough case for us, but even in Tyler, the court recognizes that, you know, this is a multifaceted description of the ways that one can possess property. And so the point, even beyond the single-means description about what it takes for the state to secure a conviction, the conduct that's covered. You know, you can define possession in a lot of ways, and maybe they're closely related and different on the margins, but the question that has to be asked is what is the conduct that's covered? And so I think saying that they're closely related doesn't foreclose the argument that it actually does encompass additional conduct. We spent some time in reply on Mathis just explaining how, in that case, the two burglary statutes at issue, or the burglary crimes at issue, the difference was a definition. It was a definition in the location element. The state defined the location element in ways that covered more locations than the federal offense. And the court, in sort of its broader explanation of what it was trying to resolve in the case, said that the differences in definition do matter. And if elements sort of cover additional conduct, that's taken into account as part of the categorical analysis. Can I take you to something that, I mean, you did a great job of briefing this case, and I read the briefs carefully. I think we all did. So, but there was one issue that there wasn't a lot of briefing about, which I don't blame you. So that's why I'd like to, before you run out of time, kind of talk to you about that. It was brief, but it wasn't discussed in depth. And that is the issue of exhaustion, and particularly I'm interested in that as to the particularly serious crime issue. And as I recall, the government said, it's exhausted, and I think in your reply, Rudy said, no, because as long as an issue is addressed, which doesn't, at least one of your arguments was, as long as an issue is addressed by the BIA, it's not exhausted. And it is true, I'm looking at the BIA's decision on page three, it has one sentence and then some citations to the case matter, the rescue factor, but basically it has one sentence. It says, we also agree with the immigration judge's conclusion, with the immigration judge's conclusion that the respondent's conviction of possession of stolen property was a conviction of a particularly serious crime. That's what, and so, I'm trying to figure out if that actually fits within this concept of if the BIA addresses. And specifically, I'd like, would it be true if the BIA just said, we agree with the IJ's conclusion as to asylum, say. Just, you know, like there's asylum withholding and cat claims. But asylum was never raised at all to the BIA. It wasn't challenged, the IJ's decision on asylum. If the BIA says, we agree with the IJ's conclusion as to asylum, period. And so, essentially what the IJ's doing is, the BIA's doing is adopting the IJ's decision. But our cases still say, if you just have a one-sentence order adopting the IJ's conclusion, you know, because sometimes the BIA does that, right? It'll just have one sentence. Then you still have to, you still have to challenge it before the BIA. You don't just, it doesn't do away with the exhaustion requirement, which makes some sense to me. How could, if, first of all, you would agree that they did not raise the particularly serious crime, this is not you, I understand, but did not raise the particularly serious crime issue at all to the BIA. No, we agree, we agree. It wasn't raised at all. The BIA has one sentence that adopts or agrees with the IJ's conclusion on particularly serious crime. How does that exhaust, how does that exhaust it? I don't. Well, I think even the one sentence does exhaust the argument, Judge Van Dyke, because it's a signal that it considered the IJ's analysis Your whole argument is that the IJ did not address certain things, and that, and it's the IJ's decision was deficient, it didn't address certain things. That's right. You never, that was never presented to the BIA, so the BIA couldn't even consider that. So when the BIA adopts this supposedly deficient rationale, I mean, you could also say the BIA didn't address it because it just adopted, so basically the IJ didn't address it, he didn't address it, challenging it to the BIA, the BIA adopted it and therefore arguably didn't address it, right? So nobody addressed it, and yet somehow it's not exhausted. And I think, or it is exhausted. It is, right, right, Judge. So I think even with Manohar Bourbano too, I mean, in terms of the signal being sent that it considered the issue fully in adopting the IJ's analysis, including the sentence that it reviewed the PSC analysis that the IJ put forward. We've said when, that's the thing, and if you take Manohar Bourbano to the ultimate conclusion, you just have a one-sentence adoption of the IJ's decision. We've still said you have to raise, you can't just like, you still have to exhaust it asylum, say, to bring an asylum claim. And there's a difference with pro se petitioners as well, Your Honor, which I think is another, is another element here. I mean, I think the broader point is that... We really are excusing exhaustion here because the BIA never had an opportunity, if you were, if we were to accept your argument, the BIA, you would agree, the BIA never had an opportunity to address that because it just wasn't, it wasn't in the IJ's decision, so the BIA couldn't get it out of the IJ's decision. I mean, indeed, that's your argument. It wasn't presented to them, and so for the BIA to say, yeah, we agree, it's no surprise it agreed. It didn't, the argument wasn't presented, they didn't have your excellent advocacy at that stage. Well, it addressed the issue, but it didn't necessarily address the subsidiary arguments, but in reviewing the IJ's decision, it addressed the broader, the broader PSC issue. I think it doesn't just create sort of an incentive for, it kind of creates a perverse incentive for people not to present issues to the IJ, hope that the, to the BIA, hope that the BIA will, like, just have a one-line acceptance of the IJ's order and then be able to essentially bypass the, because if you present it to the BIA, then the BIA would presumably address it, sort of like the previous case you heard, you know, if you actually present it to the district court judge, then we don't review for plain air, you know, so similar here, it actually creates a perverse incentive to not present. I'm not sure, Your Honor. I mean, I think, I don't think anyone wants to have to contend with potential exhaustion arguments once you get to the Ninth Circuit. So, I don't, I don't think it... Not if we say that they're not, not if we say that, I mean, it depends on how we treat exhaustion, but if we treat it the way you're saying, then it actually does create, like, I mean, if you, even if you're counseled, I would say counsel would be like, well, if we'd raise it to the BIA, the BIA will probably address it and, you know, and, and do its own analysis or something. So, let's not raise it, and then we can hopefully get the BIA, the Ninth Circuit to remand and bias another couple more years. It's possible, but it's also possible that the BIA locks in, you know, some very unfavorable analysis that may... If the BIA hadn't put the sentence in its report, or its order, would we have an exhaustion problem then? Potentially, Judge Nelson. I mean, then, then... It's a little bit odd that exhaustion turns on whether the BIA affirmatively puts, responds to an It might be a quirk in, in how the, the law is structured currently, but to your point, I think if that was the situation, I would have had arguments about his pro se status. I would have had arguments more about the substance of, of what was in his pro se brief before the BIA. Is it fair to even characterize this as just a one line? Because you've got, on the beginning of the decision, we adopting the IJ's decision. And then when it, again, addresses the particularly serious offense side, it has the line, but then it also cites and adds parentheticals to two, to several cases, including matter of fentescue, which are, which are the elements, and Anaya Ortiz. So really, it's the better part of a paragraph, you know, so I'm having, I'm having a hard time seeing this as a non-merits based decision when it, when it actually has almost a whole paragraph of discussion about the particularly serious crime, even if some of that is run through parentheticals to, to cases. No, right, Judge Sanchez. And I, and to this point, I mean, the PSC determination was wrong, to be clear. I mean, as this court knows, the BIA mandates a specific two-step framework for PSC determinations. And at, at the first step, the first steps in elements only examination to determine whether those elements potentially bring the crime within the amine of the PSC. What did the BIA say about that? Well, well, the agency didn't do that analysis. Exactly. The BIA, the IJ didn't say anything about that. The BIA didn't say anything about that. And so it just seems weird. I, you could have 14 paragraphs here. But I mean, the reason the BIA didn't discuss it, presumably, is because it wasn't presented. And it just seems, it seems... Or the BIA adopted the IJ's, the IJ's recitation of the elements, the IJ's decision to conflate several... It makes sense when a, when a, like a lower court or an agency that we're reviewing has some analysis that wasn't made. To say that, that we don't get to review that would be weird because you just got ruled against by some agency and now you can't challenge that basis because the agency came, came up with something out of left field. So it makes, that's where I think it makes a lot of sense to have this. If the, as long as the agency addressed it, it's, it's properly before us, even if you didn't present it to the agency. But where the agency simply says, yeah, we, that looks fine to me, what happened below, but nobody told the agency that it, that there was a deficiency with it. And now you're saying, oh, there's a deficiency. That seems very unfair to the agency. It's present, it's precisely the reason why we have exhaustion is because you were, it seems like you, I know your client was probably not intentionally laying behind the log, but that's what ends up happening. Right. But, but the, but the, the counter assumption though, is that the BIA reviewed, reviewed the IJ's analysis and agreed with. It's an ambitious process, you'd agree with that. Like that's the whole point. Yeah. Yes. That's why exhaustion. I mean, we have exhaustion in a lot of different contexts. You can make that argument. You say, well, the idea is that the, that the, in the prison context, the person that, you know, that the agency reviewed it and, and that the, that the prison officials reviewed this and they should have caught the mistake, even though you didn't raise it to them. But as you, as you no doubt remember, you have exhaustion in that context. You have to raise it. No, of course, of course. I think it's just important to realize that the, the, the IJ conflated the steps here. There's a clear two-step framework. The IJ didn't do step one and it got step two wrong because it omitted dangerousness from, from the analysis. We'll give you some time for rebuttal. Don't worry. Thanks, Judge Nelson. All right. Thank you. Good morning, Your Honors, and may it please the court. Imran Zaidi for the Attorney General. The board here correctly decided both issues in this appeal by concluding that first, petitioner's conviction for possession of a stolen vehicle in Washington makes him removable as an aggravated felon. And second, that that offense also amounts to a particularly serious crime. I'd like to start with exhaustion because there's some questioning about that. We're prepared to address this on the merits here. So for the most part, we're happy to submit on the papers. So I'd like you to walk through exhaustion because my question is, if it is exhausted, if we were to conclude that it was exhausted, would we still address it on the merits? I guess we have the discretion to rule on both issues, right? You do, Your Honor. And the way we briefed this and the reason we briefed it on the merits is because to the large extent, we believe that this can be resolved as a matter of interpreting state law, then you can address it on the merits there. To the extent that you think anything about the categorical analysis here would require construction of the generic definition or anything about fleshing that out, that would be why you would need to remain to the agency for it to determine what the scope of the generic definition is for some of these arguments. We do think all of this- But your point is, even if we were to be inclined to go that way on the merits, that would have, that was not exhausted. That was not exhausted. There's no question. And you've raised it as a belt and suspenders approach for the court. I'm just trying to figure out how the court should grapple with this issue. So I think, first, let me quickly address the exhaustion argument and why we think it's appropriate here. We recognize that the board adopted and affirmed under matter of Bourbono. One of the citations that we did not provide is there is an actual authority from this court for the specific I'm going to give you the site. It's 659 Federal 3rd 925. And that's a published decision from 2011 in which a petitioner did not raise any challenge at all to the particular serious crime determination. The board adopted the particular serious crime determination. And yet, despite that adoption, this court considered the issue unexhausted because, as Judge Van Dyke suggests, none of the arguments to put the board on to separately adopt the analysis. The board can even, to your point, Judge Sanchez, provide a couple sentences with parentheticals. I guarantee you those are stock sites. What about two paragraphs? I mean, it's some, I guess your point is it doesn't matter how, it doesn't matter how robust the argument is if it just wasn't raised. I actually, I don't agree with that, Your Honor. We're fine with, if the board does get into some measure of analysis, notwithstanding the failure to present any of those arguments before it, if the board starts to separately provide merits-based analysis, for instance, of the elements within the ambit argument here, or the improper factors argument here, or the separate dangerousness, the board can adopt and affirm. And sometimes it does this oddly. It adopts and affirms and then it would be exhausted. Yes, we're fine with that. Was Arste a matter of Bourbon type case? It was. It was an adoption under a matter of Bourbon. Because I've read several of these cases where matter of Bourbon, when the BIA is adopting the IJ's analysis, as long as the IJ has addressed the issues, it's deemed exhausted for purposes of Ninth Circuit review. Why doesn't that, why don't those line of cases apply here in your view? Well, and I don't know in the abstract, Judge Sanchez, whether those, in those cases, the board did more than just adopt and actually provided some evidence to it or not. I presume not, because we're talking about where it's exhausted. No, I'm, you know, where the IJ has itself provided analysis concerning the claim itself. Right. No, I realize that. I guess what I'm saying is the IJ provides analysis, like it did here. The board adopts and adopts all that reasoning. We accept that too. None of that reasoning actually responds to the arguments that the petitioner is now raising for the first time on appeal. Yeah, so that's, so do you think there's a distinction between IJ has some analysis and says, you know, about something, and then the petitioner doesn't address it, but then the BIA adopts that analysis that, and then the challenge is to the IJ's analysis saying the IJ, not something that the IJ didn't do, but something the IJ did do. Right. So in theory, the board adopted and did the same thing. Right. Yeah. Do you think there's a distinction between that and something like what's happening here, where the IJ did some stuff, but the challenge is to supposedly what the IJ did not do, never told anybody that the IJ didn't do this and this was deficient, so the BIA was like, looks good to me. Right. And has a sentence about that, and then is there a distinction between when the IJ didn't do something and that's what's being challenged versus whether challenging what the IJ actually did do? It's an interesting question, Judge Van Dyke. I'm not sure that there is because in either circumstance, the board would have been able to correct that error. So if you start with what the IJ didn't do, and that's the challenge that had been raised to the board, so for instance, this elements within the ambit, that first step analysis, the board could have corrected that. The board could have said, okay, we're looking at this and saying the elements of this crime, bring it within the category. And that's why I thought this was exhausted because remember, we're applying board precedent, you know, Frantescu and matter of NAM, which NAM talks about that this is a two-step analysis. Step one, the elements analysis is a gatekeeper role, and some of our published decisions like Bayer have reflected that as well. And so this is the board applying its own precedent to determine, you know, whether something is a particularly serious crime. And if there's a legal error in what the IJ does, the board has an opportunity to correct that. But if it adopts it in full, I thought ARDSI stood for the proposition that even if something has been erroneously done at the IJ level, if the board adopts it, that is sufficient to exhaust for purposes of Ninth Circuit review. Am I misreading that? Respectfully, Judge Sanchez, we believe you are. We believe ARDSI stands for the proposition that when the board adopts but no actual argument or challenge, none at all, just like here, has been presented to the board with respect to the particularly serious crime determination, that the board cannot possibly have been on notice of any arguments so that even if its adoption means it's just doing all of the immigration judge's reasoning again, it still didn't have an opportunity to address those arguments. I want to make sure I understand because I think I'm understanding your argument then. And that is, it doesn't so much turn on what the IJ did, but whatever the IJ did, no challenge at all, if there's no challenge at all to the BIA, and all that the BIA does is summarily adopts or summarily affirms in some fashion, then you would say it's waived. Whereas if the IJ said, we agree, but then has its own analysis, then that would invoke the rule that, the other rule we've been discussing, that where the agency addresses it, it's not waived. Sorry, where the board does, right? Yeah, where the board does. Yes, absolutely. So that's the distinction. That's the on-off switch for purposes of the board. Sure. Do our judges walk through it like that? I mean, it's an interesting way to look at it, but it seems to me exhaustion should either rise or fall on the arguments that petitioner makes. If they are, I don't know. Your case is, yes, Your Honor, I believe the Ninth Circuit's cases do. We do distinguish it that way. We do distinguish between. My understanding is that only a few circuits rely purely on what, solely on what the petitioner has raised before the board. I think the Eleventh Circuit is one. Maybe the First Circuit is another. Where even if the board fully addresses the fact that a petitioner, I guess at that point a respondent, has not raised something before the board, even if the board fully addresses it, that the failure to have brought that up before the board would still mean that the issue is not exhausted. But here we have – That's not what the Ninth Circuit has said. Right, because the Ninth Circuit has said if you tee up an issue, let's say a CAD claim, even if there are not specific arguments that are being raised to the Ninth Circuit, that's sufficient for exhaustion purposes if the BIA has addressed CAD. No question. And, yes, we're not disagreeing with that. So I think – But we don't have to address exhaustion, right? If we agreed with the government on the merits, we could avoid exhaustion and just rule on the merits. Certainly. Exhaustion is no longer after Santos-Zacharia. All right. Now, if we went the other way, if we disagreed with you on the merits, then I think we would have to address exhaustion, right? I think that's right, Your Honor. Yes. Yes. It's no longer jurisdictional, so I do think – I think it would certainly be – But it was still an argument. I mean you've raised – We've raised it. Yes. You haven't waived the exhaustion argument before us. Let me be very clear. If you disagree with us on the merits, we would very much like you to look at the exhaustion. Well, not just very much like. I think we would have to. You would have to. Because you've raised the argument. Yes. I just mean you wouldn't have to because of jurisdiction after Santos-Zacharia. Right. Absolutely. Absolutely. Can you mention again – I'm not sure I was aware of the case that you mentioned. That had a particularly serious crime determination. It was not raised to the BIA. The BIA had a summary adoption of the IJ's decision, you said. Yes. And then our court found it. Was that a published opinion or was it – It was a published decision named – Can you give me the site for it? RSD versus Holder. And it's 659 Federal 3rd 925. 2011 decision. 935? 925, sorry. And what about cases like Kwong and Parada where if an issue has been raised to the BIA and the BIA does address it on the merits, you would say that – does that satisfy exhaustion here? So if – taking my example where it's not just one line but citations to authority with parentheticals, is that sufficient to have addressed this issue of particularly serious crime on the merits to exhaust under Parada, under our other published authority for parentheticals? Yes. I mean, I suppose it's still going to depend on exactly what they say in that merits analysis. But without question, if the board has addressed even – not necessarily all, but some measure of the arguments a petitioner has made before the board – or I'm sorry, this is a hypothetical where they haven't raised anything, right? So say nothing is raised before the board. The board addresses the analysis, performs its own, say, adopts and affirms, but then somehow provides some additional reasoning. Without question, once you get to a certain level of separate analysis by the board – Oh, you think it has to be separate analysis? Because when I read Parada, it wasn't separate analysis. It was just adopting. Maybe I – I don't know. Many cases, but – I'm not pretending that it is that clear of a line, Your Honor.  You think that's the most helpful guide? Yes, because it is adopt and affirm. There's no question. There's no additional analysis here by the board. And the sort of two sites to matter, Frantesco and Matter of NAM, don't provide any additional analysis. Those we read as sort of a stock site to particularly serious crime analysis. All of this said, I'm happy to address any of the merits here. Can we? So why – just to start with the step one element. I think your brief said that the IJ explained the elements, and really it seems to me just like a recitation. Recite it. I don't see anything. The problem that I had with how the IJ approached this is it's hard for me to divine why it's thought that this happened to be a particularly serious crime. Sure. There's that absence of any discussion of dangerousness, and we can get into – of why this person might be a danger to society. And there's an absence of any real discussion about why these elements fit within – bring it within the ambit of why it might be a particularly serious crime. Sure. So rescue the IJ for me because I'm having a hard time understanding what it said. Sure, Judge Sanchez. So there's sort of two separate pieces there, right? I'm going to first talk about the first step analysis and the second the separate dangerousness determination. So when it comes to that first step, we don't deny that there's a first step of the analysis required, which is whether the elements of a crime bring it within the category of a particularly serious crime. Now this court has made very clear and bare that there's a pragmatic approach to that, meaning that this is a gatekeeping function. The more serious a crime is, the sort of further down along the spectrum towards a serious crime it is, the sort of less technical you need to be in doing that analysis. And so what the court said and bare is where you have an aggravated felony, as you do here, where you have a crime with straightforward elements, as you do here, possession of a stolen vehicle with knowledge that it's stolen, and where you have a crime that's punishable by more than five years. Here you have a crime that's punishable by ten years. Petitioner himself was almost sentenced to five years. He had a 43-month sentence. Had it been five years, we would not be having this conversation because it would be a per se particularly serious crime. But where you have all three of those things, this court made very clear it will not require an explicit consideration of whether the elements of the crime bring it within the category of particularly serious crimes because it's so obvious that it does. Let me ask this. Bare involved felon in possession of a firearm, which leaps out at me, even apart from the serious incidents that occurred in bare to substantiate that determination. Receiving stolen property doesn't leap out to one in the same kind of way. Does that factor in to how we should consider this? It doesn't for the first step. And frankly, Your Honors, even in the circumstances and factors analysis, it doesn't in the sense that there are aggravated felony grounds like obstruction of justice and fraud that don't necessarily require any sort of physical danger. And Congress has obviously made clear that for those crimes, which are aggravated felonies and where you have a sentence of five years, we don't even look at anything else. You don't do any dangerous analysis because it is automatically a particularly serious crime. Now, having said that, we recognize that, of course, and the board and this court and several courts have said crimes against people, crimes that involve sort of physical danger, violence, those are going to be more likely to be particularly serious, sure. But it is a big difference that, or rather, it's important to understand that other crimes that don't involve that physical harm can certainly be, and this court has recognized that. In Bayer, it sort of summarizes some of this court's particularly serious crime jurisprudence, including non-physical crimes. Like in Arbeed, it was, I believe, male, I think it was male fraud, and it recited other courts' evidence tampering, sorry, witness tampering, identity theft, securities fraud. These are all cases where other courts have said they're particularly serious crimes. They might present less serious cases than the more physical, violent, dangerous crimes, but they certainly can't be particularly serious crimes. So in your view, now, do you think Bayer is a controlling decision or just persuasive authority for us? I think it's persuasive, Your Honor. I don't know. Even the way that we read Bayer, it's not clear that there's any sort of test. I mentioned three factors just now, and that's just sort of analogizing this case to Bayer. I don't read those as sort of three-factor tests for when you don't do the analysis. But we believe it's persuasive, and we believe at a minimum it directs this court towards a more pragmatic approach to the question of whether a crime is particularly serious, and specifically when you're looking at that first step of the analysis. I see that my time is up. I want to finish the second part of the question, which is the separate dangerousness, if that's okay, Judge Nelson. This court's made very clear in Gomez-Sanchez that there's no separate dangerousness analysis. Now, I obviously gave you several reasons why both Congress and the Board in addressing particularly serious crimes can still consider a crime particularly serious even without any particular physical amount of danger. Well, no separate dangerousness analysis once there's been a finding of particularly serious determination, right? Correct. I think we all understand that. But the case also said that dangerousness is the key component to analyzing this sort of thing, and that even comes from Frantescu itself. Right. But there didn't seem to be anything here. It seemed as if the I.J. was kind of reciting what happened again, you know, stealing the Jeep, using it to steal packages from people's homes. But there was nothing guiding, to me at least, that guided a sense of why the I.J. thought or why the agency thought this amounted to something that was particularly serious. Well, and I guess the answer to that turns on what you think that why would be. What would you be looking for in that analysis? So we recognize that you're saying even just looking at the crime itself, do you look at danger in that analysis, right? Forget the future danger or the person, whether they present a threat. Even in looking at the crime itself and what is it that makes it particularly serious I think is what you're getting at, and this court has never required that that analysis explicitly talk about danger. I think it is inherent in what this court says, and in Baer it's more obvious we're talking about a felon in possession and something where there's a more obvious physical threat. But, again, this court has never required that, and there are other types of crimes that do not involve any type of physical danger, like the decisions they describe in Baer, like this court's decision in Arbeed. You don't think there are cases that say that dangerousness remains the essential key to determining whether the individual's conviction was for a particularly serious crime in the first instance? Gomez, Sanchez, Delgado, Konu, we recite it several times. You don't think dangerousness has to go into – figure into that analysis in some kind of way? Sure, it goes in. I'm not saying that we have to have the word dangerousness, but something that just gives a reviewing court some indication as to where the I.G. was coming from. Without question, Judge Sanchez, I guess what we're saying is that dangerousness doesn't need to be physical violent danger, and that's when you talk about money laundering. Think of danger as a risk to society, and that's why I brought up multiple other cases both from this court and others that involve things like money laundering, witness tampering, securities fraud, things like that. And I'll also mention that this is a receipt of stolen property crime, so again, it sounds like you're suggesting maybe it's not quite as obvious. Receipt of stolen property is sort of a not commonly litigated crime, but it's a species of theft. Theft is commonly considered by this court and others to be a particularly serious crime. There's two unpublished decisions just in the last couple months. That's not uncommon at all, and again, that's because we're not relying solely on physical violent danger, and both Congress and the board have made that clear. Okay. Thank you. We'll give you two minutes for rebuttal. Thanks, Judge. Just quickly on exhaustion, I want to emphasize that under Parada, again, the issue with exhaustion is just making sure that the board is on notice of the broad issue. Parada doesn't require that the board be on notice of every potential argument that could have been brought to challenge the decision, especially here where the board affirmed the IJ's decision of the PSC analysis. The assumption is that at minimum it looked at the IJ's analysis and said the legal standard was applied correctly. What about the RSD case? I hadn't looked at that either. Can you respond to that? Are you familiar with that case that the government cited? I don't recall that off the top of my head, Judge Nelson. If you want to do, like, a 28J letter afterwards, you would be free to do so. Great, great. Thanks, Judge. So I just wanted to make that point about the board being on notice of issues, not arguments. As the court has said many times, the exhaustion doctrine isn't applied in a formalistic manner. On Baer versus Barr, I mean, Baer is different for a number of reasons, but one is that, as this court noted in Baer, the IJ in that case had discussed the correct legal standard. It discussed that there was a two-step analysis, that the first step, you know, was a gatekeeping function or served as a gatekeeping function, and that it couldn't move on until it satisfied Step 1 and then went to Step 2. And then finally, on the Step 2 analysis, again, even if you were to excuse the Step 1 deficiency, Step 2 was wrong because the agency never mentioned dangerousness. It never connected, as my colleague said, never connected the circumstances of the offense to Mr. Tmuk being a risk to society. I mean, I would agree that you are— Can you address briefly the Canoe versus Holder case from 2014 where we said, by citing the nature of the conviction, the circumstances and underlying facts of the conviction, and the nature of the sentence imposed, that was enough? Why do—you seem to be asking for a higher standard. Oh, no, no, not at all, Your Honor. I mean, there, again, though, even at least making sure you discuss the correct legal standard, there wasn't an issue about including danger as the essential key in that case. So, yes, as long as you analyze all the Step 2 factors and make a reasoned connection to the noncitizen being a danger to the community, that definitely suffices. So I'm not suggesting that DIJ needed to provide an additional paragraph or any specific measure of substance beyond making and drawing a connection between the circumstances of the offense and the presumption that he would be a danger to the community. So don't we have cases that say that there is a presumption that they'll be dangerous if it's a particularly serious crime, right? Right. And so it seems to me that the way a presumption typically works is, you know, once you—it's not a categorical presumption. You can rebut the presumption. Somebody could be a particularly serious crime, but they not be dangerous. But if it's a presumption, then why isn't it actually presumed in that? Why do we need to have an explicit discussion of dangerousness? You'd think you'd only have—if it's a presumption, you'd only have to have an explicit discussion if it went the other way. Right. I mean, on its face it sounds like there's a little bit of circularity there, Judge, but the cases are clear that you have to mention— well, one, you have to mention dangerousness in discussing the legal standard. You have to identify the correct legal standard. But two, to provide a reasoned explanation, as the agency is obligated to do, you have to connect the circumstances of the offense to justify the presumption that the noncitizen is dangerous. So you don't get the presumption unless it's— Sorry, I don't mean to belabor you, but we're going to do it anyway. What if the BIA said he was convicted of murder? That's the end of the story. Like, would you be—well, he didn't say murder was dangerous. So, I mean, I guess there's—that's what I'm struggling with is there's got to be some implicit understanding. And at some point, like—I mean, you seem to be arguing, well, it's not intuitive that stealing property or having possession of stolen property or disposing of it if you never had possession of it in the first place is dangerous in and of itself. And I don't know where that line drawing ends. Right. No, it can be a different—a difficult line drawing exercise, Judge Nelson. And I agree, in that case— Because if he said, well, he was jaywalking— Right, right. Therefore, we're done, then maybe I guess you'd have more of an argument here. And so I'm just trying to figure out where our role is. It seems to me jaywalking would be very difficult to find as a particularly serious crime because those kind of crimes aren't typically serious. The ones that typically are particularly serious are ones that have— that would presumably, say, would normally be a dangerous crime. So I understand that a particularly serious crime is presumed to be dangerous, but doesn't that mean that it normally would be dangerous and you only need to sort of independently address the dangerousness if it goes the other way, right? If it's built into the particularly serious crime. It's rough. It's rough. That's why it's a presumption. That's why it's not an absolute given. But it is the presumption that they'd be dangerous. But I think the way—the reason the test is framed the way it's framed is to make clear that you don't have to do a standalone analysis into the personal characteristics of the individual, but you still have to connect the circumstances of the offense in a way that shows the agency is saying that those things justify the presumption of the danger. Wait, can I clarify? There's not a presumption. If someone is—if something is coming before the board as to whether a state conviction is a particularly serious crime, you don't start from a presumption that it is particularly serious unless it's disproven. I thought step one, elements, do the elements of that state crime of conviction, bring it within the ambit of what might be a particularly serious crime, and then step two, you get into the nature of the circumstances, the crime, and all of that. And then if there's a determination found for a particularly serious crime, then that's—there's no presumption. That's the end of the story. Someone's considered dangerous. You don't have to do a separate dangerousness analysis. I'm not—where is there a presumption? Where does a presumption operate in any of that analysis? No, that's exactly right, Judge Sanchez. It operates after you do the analysis at step two. What I was trying to clarify is that— But then it's not a presumption. It's just—it's automatic, right? Like if someone has decided—if the agency has decided it's particularly serious, there's not a presumption of dangerousness because there's nothing rebuttable about it. It's just that's the determination itself. No, that's exactly right. I guess the way that presumption is defined in this context is to say you don't have to continue on after you've done the analysis that connects the circumstances of the offense to dangerousness. After that happens, the noncitizen is presumed to be a danger to the community, and you don't have to go beyond that. So, yes, it is. It is the end of the analysis in the sense that you don't have to then do a stand-alone inquiry. That's where the presumption comes in. You don't get it before—there's no presumption before the actual analysis. The analysis gets you the presumption, and then the agency does not have to go beyond that to do the stand-alone inquiry. So your view is there's no—you agree that there is—once it's particularly serious, once you've found something's a particularly serious crime, now there's a presumption of dangerousness. I think you would agree to that. Once— Once you've actually completed the analysis. Right, so long as the analysis includes the essential key. So your argument is that you have to do a dangerousness, an independent dangerousness analysis to come to the particularly serious crime. No, not an independent analysis, Judge Van Dyke. Analysis—the dangerousness has to be part of that step two evaluation. It's not stand-alone. It's within the analysis itself. But it can't be built into the other things that you're considering under your—I mean, you're saying— what I mean by independent is you have to take dangerousness into account in a separate— I see. That's your whole argument, isn't it, that you have to take dangerousness— you have to discuss something about dangerousness. Right. But again, not independently, not as a stand-alone inquiry. What I'm saying is that dangerousness is the essential key to a PSC determination. So at step two when the agency is analyzing, is making that step two determination, dangerousness has to be an integral part of that analysis. And once you do that, there's no obligation to do an additional stand-alone independent inquiry. Okay, counsel. Thank you. Thanks for your time. It's actually been very helpful. The argument today is very helpful. We appreciate both counsel's preparation and presentation. The case is now submitted.
judges: NELSON, VANDYKE, SANCHEZ